1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re                            ) Case No. 18-14663-B-11
                                 )
**3MB, LLC**,                        ) DC No. LKW-10
                                 )
                Debtor.          )
                                 )
                                 )
                                 )
_____  )

**MEMORANDUM DECISION ON DEBTOR 3MB'S OBJECTION TO
ALLOWANCE OF U.S. BANK'S AMENDED CLAIM**

<u>INTRODUCTION</u>

Debtor limited liability company borrowed about $9.5 million from claimant's predecessor secured by the debtor's shopping center and the rents the center generates.  The debtor could not retire the loan when it matured two- and one-half years ago.  Then this chapter 11 case was filed halting claimant's foreclosure efforts.  Claimant filed a proof of claim.  The debtor now objects to the default interest portion of the claim. Debtor contends the default interest is unenforceable as an invalid liquidated damage clause under California and Bankruptcy law. Finding the default interest provision is not a liquidated damages clause or if the debtor is correct and it is a liquidated damages clause, it is valid, the court overrules the objection.

*///*

PERTINENT FACTS

Pre-Petition Events

3MB, LLC is a California Limited Liability Company that owns and operates a shopping center on 24th St. in Bakersfield, California.  There are two members: Robert Bell ("Bell") and Mark E. Thomas ("Thomas").  Bell and Thomas have been involved in various commercial transactions for at least twenty-five years.

When its business began thirteen years ago, 3MB borrowed $6.4 million from Prudential Mortgage Capital Company, LLC ("Prudential"), signed a note and granted Prudential a deed of trust and assignment of rents encumbering the shopping center. Six months later, the financing was restructured into two notes secured by the same collateral: an "Earnout Promissory Note" in the principal amount of $3.05 million and a "Consolidated Promissory Note" ("Note") covering the original and earnout notes for a principal amount of $9.45 million.  3MB apparently had counsel prepare an opinion letter to satisfy Prudential as a condition to the restructure.[1]

The "Note (interest) Rate" is 6.27% per annum.[2]  The Note contains a provision for default interest — 4% plus the Note Rate — and is applied at maturity under clause 2.2 of the Note which says, in part:

> . . . at all times after maturity of the indebtedness evidenced hereby . . . interest shall accrue on the outstanding principal balance of this Note from the date of the default at the Default Rate, and such

---

[1] Initially 3MB claimed it did not have counsel when the restructure was negotiated.  Claimant has presented evidence establishing otherwise.

[2] The Note provides that the applicable law to be applied is the law where the collateral is located; that is California.

2

> default interest shall be immediately due and payable.
> Borrower acknowledges that it would be extremely
> difficult or impracticable to determine Lender's
> actual damages resulting from any late payment, Event
> of Default or prepayment, and the late charges,
> default interest and prepayment fees, premiums, fees
> and charges described in this Note are reasonable
> estimates of those damages and do not constitute a
> penalty.[3]

Bell testified in his declaration that when the loan was negotiated there was no discussion why the default interest provision was included in the Note or the damages Prudential may suffer if the Note was not paid at maturity. The testimony has not been disputed.

Bell also testified that Prudential never identified any damages it would incur upon default that would be charged to the debtor. Bell claimed his understanding of default interest provisions was an incentive against default and to "penalize" the debtor if there was a default.

After a series of interim transfers and a merger, the Note was assigned to claimant U.S. Bank, N.A. as successor Trustee for the registered holders of Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates, Series 2007-PWR16 ("U.S. Bank"). U.S. Bank is the undisputed holder and owner of the Note and the rights to enforce the obligations against the collateral.

During the Note's term, 3MB made all required payments. The Note matured in May 2017. 3MB tried to refinance without success. U.S. Bank began enforcing its security interest and started a nonjudicial foreclosure. U.S. Bank also filed an

---

[3] The default rate applies in other circumstances of default, not just a maturity default.

action in the Kern County Superior Court and sought appointment
of a receiver.  A trustee's sale was scheduled for November 21,
2018.  Two days before the sale, this Chapter 11 case was filed.

Pertinent Post-Petition Events

    3MB has consistently claimed in its schedules, amended
schedules and elsewhere the value of the shopping center is $12
million.  U.S. Bank filed a proof of claim in December 2018
which was amended nine months later.  In the amended claim, U.S.
Bank says the value of the shopping center is $9.3 million.

    U.S. Bank's initial claim was for $8.578 million which
included $498,538.61 of default interest.[4]  The amended claim is
for $8.951 million.  The difference includes over $200,000 of
accruing default interest, $327,710 of "note rate" interest and
subtraction of a "suspension credit."[5]  For purposes of this
objection, at least, U.S. Bank appears over secured.

    U.S. Bank and 3MB agreed to use of cash collateral.  The
order approving the stipulation was entered.  3MB has made the
payments under the order.

    After the expiration of debtor's exclusive time to file a
plan under 11 U.S.C. § 1121(b), U.S. Bank filed a creditor's
plan and disclosure statement.  Under this proposed plan, U.S.
Bank would employ a manager to take over the day-to-day
operations of the shopping center.  U.S. Bank would sell the
center. After the center was sold, U.S. Bank would be paid.

_____

[4] As will be seen shortly, this is the only component of the claim 3MB
finds objectionable.

[5] The court surmises this "credit" represents adequate protection
payments under a cash collateral stipulation and order.  But, the source of
the credit is irrelevant to this objection.

Except for payment of any claims of insiders, U.S. Bank proposes to pay non-insider unsecured creditors in full.[6]  The plan also proposed to "hold back" any disputed amounts of default interest until the litigation concerning that issue was resolved.

Shortly after U.S. Bank's plan was filed, 3MB proposed its own plan and disclosure statement.  The current management structure would remain in place under the plan and U.S. Bank's loan would be restructured to be paid out over time with interest.  Default interest would not be paid.  3MB claims the allowance of the default interest would make its plan infeasible.  3MB also claims that the insider unsecured creditors and all other unsecured creditors would be paid in full under its plan.

Almost concurrently, 3MB filed this objection to the default interest component of U.S. Bank's claim.  With the court's encouragement, the parties prepared a joint disclosure statement discussing both of their plans.  The disclosure statement has been approved.  No plan solicitations have occurred. The parties await the ruling on the allowance of default interest.

<u>CONTENTIONS OF THE PARTIES</u>

3MB argues that the default interest provision is an unenforceable liquidated damage clause under California law. The amount of default interest — 4% over the Note rate — was unreasonable at the time the Note was made, claims the debtor.

---

[6] Other than the secured claim of the Kern County Treasurer and Tax collector, there is one other non-insider creditor that filed a claim in the case for a modest amount. Bell's claim is for $292,000; Thomas'— $342,000.

Since the liquidated damage is a penalty, under debtor's theory, it is unenforceable under California law and under bankruptcy law. Debtor also argues that the default interest rate should be disallowed on equitable grounds. Default interest, says 3MB, is inequitable because: 3MB performed under the Note before maturity; 3MB's proposed plan provides for payment of all principal, interest, costs and expenses owed U.S. Bank; U.S. Bank will receive "a windfall" if default interest is allowed; and, the debtor's reorganization will be prejudiced if default interest is allowed.

U.S. Bank counters that default interest is not liquidated damages under California and bankruptcy law. Instead, incurring default interest is "alternative performance" under a matured note and authorized under long standing California precedent. The default interest involved here compensates the lender for the impact on the loan's value since it is now due and the resulting increased "carrying" costs. U.S. Bank offered expert testimony from Cynthia Nelson which has not been challenged that default interest is common in commercial loan transactions of this size. Also, the default interest balance due is only 4% of the loan balance and so, very reasonable. Even if the default interest is analyzed as liquidated damages, U.S. Bank reasons, the debtor has not met its burden under California law to invalidate the default interest provision of the Note.


JURISDICTION

The United States District Court for the Eastern District of California has jurisdiction of this civil proceeding since it

arises in a case under title 11 of the United States Code under 28 U.S.C. § 1334(b).  The district court has referred this matter to this court under 28 U.S.C. § 157(a).  This is a "core" proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).[7]

### ANALYSIS

This court's legal conclusions are reviewed *de novo* and factual findings for clear error.  Neilson v. Chang (In re First T.D. & Inv., Inc.), 253 F.3d 520, 526 (9th Cir. 2001). Allocation of burden of proof and those issues involving statutory interpretation are legal questions invoking *de novo* review.  Curtis v. Shpak (In re Curtis), 571 B.R. 441, 444 (B.A.P. 9th Cir. 2017).  Liquidated damages awards are reviewed for abuse of discretion.  Traxler v. Multnomah Cty., 596 F.3d 1007, 1015 (9th Cir. 2010).  The "clearly erroneous" standard applies if the question is whether there is sufficient evidence to rebut an evidentiary presumption.  Garner v. Shier (In re Garner), 246 B.R. 617, 619 (B.A.P. 9th Cir. 2000) (superseded by statute in part on unrelated grounds).  A finding is "clearly erroneous" when although there is evidence to support it the reviewing court is left with a definite and firm conviction that a mistake has been committed.  Anderson v. Bessemer City, 470 U.S. 564, 573 (1985).  But a ruling is not clearly erroneous unless it is illogical, implausible or without support in the

---

[7] Neither party has disputed this court's authority to enter a "final" decision on this objection and so they have consented to this court doing so. But, if it is determined this court cannot enter a final decision in this matter, this memorandum is the court's findings of fact and conclusions of law.

record. <u>Ezra v. Seror (In re Seror)</u>, 537 B.R. 924, 929 (B.A.P. 9th Cir. 2015).

After a brief overview of the claims process and whether 3MB has overcome an initial evidentiary burden, the court will review whether the default interest provisions here require scrutiny as liquidated damages. The court will then alternatively apply a liquidated damages analysis.

<u>1.  3MB has the burden of proof</u>

"A proof of claim executed and filed in accordance with [the Federal Rules of Bankruptcy Procedure] shall constitute prima facie evidence of the validity and amount of the claim." Federal Rule of Bankruptcy Procedure 3001(f).[8]  This evidentiary burden is rebuttable.  <u>Litton Loan Servicing, LP v. Garvida (In re Garvida)</u>, 347 B.R. 697, 706 (B.A.P. 9th Cir. 2006).  "If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." <u>Ashford v. Consol. Pioneer Mortg. (In re Consol. Pioneer Mortg.)</u>, 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995).  But if the objecting party does not rebut the presumption, the claims litigation ends there; the claim should be allowed without the claimant bearing any further burden to demonstrate the validity of its claim. <u>Lundell v. Anchor Constr. Specialists, Inc.</u>, 223 F.3d 1035, 1041 (9th Cir. 2000).

---

[8] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.  All "Rule" references are to the Federal Rules of Bankruptcy Procedure and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

This objection presents an interesting twist on the usual burden of proof.  The debtor here is raising defenses to allowance of a provision in a promissory note. See §558.  U.S. Bank complied with the requirement of Rule 3001 here and amended its claim as well.  So, the initial burden is on the debtor to negate an element of the claim.  But the debtor here is not challenging the elements of the claim — just the enforceability of a component of the claim.  So, the court must determine if the affirmative defenses have been established by the debtor rather than analyze whether the claim itself is supported by sufficient evidence.  3MB's burden is the same and so is U.S. Bank's - they just arise differently than standard claim litigation.  So, for our purposes, the debtor's affirmative defenses must be reviewed. We are passed the allowance of the claim and examine only one of the claim's components.

## 2.  The default interest provision is not liquidated damages

Section 506(b) includes in a claim of an over-secured creditor ". . . interest . . . and any reasonable fees, costs, or charges provided for under the agreement . . . under which such claim arose."  The code is silent on the interest rate to be allowed.  The Supreme Court in Travelers Cas. & Sur. Co. of Am. v. PG&E, 549 U.S. 443, 450 (2007) affirmed that "[c]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code."  The Ninth Circuit "read(s) Travelers to mean the default rate should be enforced, subject

only to the substantive law governing the loan agreement, unless a provision of the Bankruptcy Code provides otherwise." GE Capital Corp. v. Future Media Prods., 536 F.3d 969, 973 (9th Cir. 2008) ("GECC").  In reviewing a bankruptcy courts' disallowance of default interest as a component of GECC's payoff demand in an asset sale, the Ninth Circuit remanded the case so the trial court could determine whether the rate was unenforceable under applicable non-bankruptcy law subject to "equities involved in [the] bankruptcy proceeding." Id. at 974 (quoting In re Laymon, 958 F.2d 72, 75 (5th Cir. 1992) cert. denied, 506 U.S. 917 (1992).  California law applies here.  So, the next question is whether substantive California law prevents enforcement of default interest under this Note.

California law allows a creditor to recover default interest from a borrower.  Flojo Internat., Inc. v. Lassleben, 4 Cal. App. 4th 713, 721 (1992) [subrogated guarantor entitled to enforce default interest]; San Paolo United States Holding Co. v. 816 S. Figueroa Co., 62 Cal. App. 4th 1010 (1998) [trial court directed to recalculate deficiency balance after judicial foreclosure, including interest at default rate].  GECC places the burden on the debtor to demonstrate the default rate is unreasonable or unenforceable under non-bankruptcy law.  Wells Fargo Bank, N.A. v. Beltway One Dev. Grp., LLC (In re Beltway One Dev. Grp., LLC), 547 B.R. 819, 830 (B.A.P. 9th Cir. 2016).

3MB has not met the burden here.  First, default interest following note maturity has long been allowed in California without resort to a liquidated damages analysis.  In Thompson v. Gorner, 104 Cal. 168 (1894) the California Supreme Court upheld

10

a default interest provision under a note which was triggered upon maturity. Id at 170. In Thompson, the note matured but the non-default rate was paid in payments thereafter and accepted by the lender. When the lender finally refused to accept the late payments, it sought the full amount due with interest at the default rate. The court held the default rate was bargained for, but the lender waived its application for the period it accepted the payments. The default rate — 1% per month — was allowed thereafter.[9]

The California Supreme Court's decision in Garrett v. Coast & S. Fed. Sav. & Loan Ass'n., 9 Cal. 3d 731 (1973) (superseded by statute on irrelevant grounds, see Walker v. Countrywide Home Loans, Inc., 98 Cal. App. 4th 1158, 1171 (2002)) did not overrule or significantly limit Thompson concerning matured notes. Garrett reviewed a demurrer to a class action complaint where the class was obligors under notes secured by deeds of trust. Late charges were assessed by the lender on the entire unpaid balance if there was a payment default. The court held that late charges based on the entire unpaid balance for failure to pay an installment was punitive and was not rationally calculated to merely compensate the injured lender. Id. at 740. Garrett specifically distinguished Thompson noting that at maturity, the borrower in Thompson "owed only what he had contracted to pay had there been no default, the principal amount plus accrued interest. If these amounts were not then paid the parties agreed that interest at the higher rate would

---

[9] A version of Cal. Civ. Code § 1671 (liquidated damages) was enacted in 1872, before Thompson was decided. That statute has been amended only once in 1977, effective 1978, establishing presumptive validity of liquidated damage clauses in commercial contracts.

accrue." <u>Garrett</u>, 9 Cal. 3d. at 849.  That is precisely the
situation here.  3MB failed to pay the "balloon" at maturity and
default interest began to accrue.  <u>Thompson</u> more closely mirrors
this situation; not <u>Garrett</u>.[10]

Second, the default interest charged here is not a penalty.
"A default rate of interest should not be a penalty.  Rather, it
should be a means for compensating the creditor for any loss
resulting from the nonpayment of principal at maturity." <u>In re</u>
<u>DWS Invest., Inc.</u>, 121 BR 845, 849 (Bankr. C.D. Cal. 1990) [25%
not approved because it "seem[ed] excessive" and no evidence
presented justifying the rate other than it was equal to what
was charged in other transactions].

> [T]he general rule for whether a contractual condition
> is an unenforceable penalty requires the comparison of
> (1) the value of the money or property forfeited or
> transferred to the party protected by the condition to
> (2) the range of harm or damages anticipated to be
> caused that party by failure of the condition.  If the
> forfeiture or transfer bears no reasonable
> relationship to the range of anticipated harm, the
> condition will be deemed an unenforceable penalty.

<u>Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.</u>, 232
Cal. App. 4th 1332, 1358, <u>as modified on denial of reh'g</u> (Feb.
9, 2015).

The facts here favor a finding of no penalty.  U.S. Bank
presented the testimony of their expert, Cynthia Nelson.  She
testified (by declaration) without contradiction that the value

---

[10] The distinction between liquidated damage and "alternative
performance" contractual provisions was more recently illustrated in <u>McGuire</u>
<u>v. More-Gas Invs., LLC</u>, 220 Cal. App. 4th 512, 522-23 (2013) [summary
judgment reversed when facts were not presented showing that "a realistic and
rational choice" could be made when viewed at the time the contract was
made].

of the loan is seriously compromised since now the loan no
longer conforms to its expected duration.  So, U.S. Bank is
damaged and has higher costs and expenses including the use of a
special servicer to enforce the now matured loan.  Both Nelson
and U.S. Bank's other witness, Nikula, noted that the 4%
interest charge in addition to the note rate is well within the
range in similar commercial loans and that was the case when 3MB
signed the Note.  Also, the small percentage that the accrued
balance of default interest is compared to the balance of the
loan supports that the charge here is reasonable.  There is no
contrary evidence that the charge here bears no relationship to
the harm U.S. Bank currently experiences or would have at the
inception of the loan.  Bell opines in his declaration that U.S.
Bank will recover all its' "costs" without the default interest
provision because of the center's value and potential future
cash flow.  Assuming Bell is correct — ignoring the speculation
— there is no contrary testimony on the impact on the value of
the loan unpaid on maturity.

　　　Third, application of the default interest provision in
this case is equitable.

　　　　　The power to modify the contract rate [of interest] on
　　　　　notions of equity should be exercised sparingly and
　　　　　limited to situations where the secured creditor is
　　　　　guilty of misconduct, the application of the
　　　　　contractual interest rate would harm the unsecured
　　　　　creditors or impair the debtor's fresh start or the
　　　　　contractual interest rate constitutes a penalty.

In re 785 Partners LLC, 470 B.R. 126, 134 (Bankr. S.D.N.Y. 2012)
(citing Urban Communicators PCS Ltd. P'ship v. Gabriel Capital,

*Ltd. P'ship*, 394 B.R. 325, 338 (S.D.N.Y. 2008)). No court has adopted a bright line rule that the contract rate should be refused in all insolvent debtor cases. "Most Chapter 11 cases involve insolvent debtors, and such an exception would swallow up the rule that the over secured creditor is presumptively entitled to the 'contract rate.'" *In re Residential Capital, LLC*, 508 B.R. 851, 858 (Bankr. S.D.N.Y. 2014) (quoting *In re Madison 92nd Street Assocs. LLC*, 472 B.R 189, 200 n. 7 (Bankr. S.D.N.Y. 2012)). There is no allegation or proof here that U.S. Bank or its' predecessors are guilty of misconduct. The court has determined the default interest here is not a penalty for the reasons stated. So, the question here is harm to unsecured creditors and impairing the debtor's fresh start.

There are three unsecured creditors in this case.[11] Two are insiders with substantial claims. The third — not an insider — has a much smaller claim. True enough, insider claims are allowed unsecured claims absent objection. But here, solvency is inconclusive.[12] The debtor claims the shopping center has $3.0 million in "equity;" U.S. Bank claims there is about $500,000.00 of "equity." So, without a conclusive finding of value, the unsecured creditors will either receive full payment or something less. Even at the lower value, the fact the unsecured creditors may not receive their full claim does not make the default interest charged here inequitable. Unsecured

---

[11] There are two personal injury claims disputed by the debtor. One is apparently covered by insurance; the other may be but there are other defendants in the underlying personal injury litigation. Neither claimant has filed a claim.

[12] At the hearing on this motion, there was a suggestion that this debtor in possession is currently administratively insolvent. The court is not making that finding. As will be seen, that would not control the equitable analysis.

creditors often receive less than their full claims in a
bankruptcy case.  Also, the unsecured creditors have received
many benefits in this bankruptcy including: staying the
appointment of a receiver; over one year of 3MB's continued
operation instead of foreclosure; freedom for 3MB to litigate
pending eminent domain cases; the opportunity to vote on the
proposed plans.  On balance, the treatment of unsecured
creditors does not mandate disallowance of the claim.

Impairment of "the fresh start" is undefined by the debtor
here.  Bell's declaration concludes the payment of the default
interest will have a "negative impact" on reorganization.  How?
No quantifiable basis for the conclusion is included in the Bell
declaration.  The debtor has not met the burden on that issue.

Debtor's other reasons why default interest in this case is
inequitable are similarly unsupported.  The fact debtor made all
payments under the loan before maturity does not mean default
interest is inequitable.  The debtor performed the contract
through maturity which is what is expected of parties to a
contract.  The same is true of the debtor's performance under
the cash collateral order.  The debtor was ordered to make the
payments and otherwise perform. Default interest is not a
windfall for U.S. Bank. Not only is the default interest under
the Note within the acceptable range for similar commercial
loans according to the undisputed testimony, disallowed default
interest could be a "windfall" for equity in this case if the
shopping center's value is what the debtor claims.  The terms of
the loan were known when it began.  Absent inequitable conduct
by U.S. Bank or its' predecessors, this court cannot ignore the

terms of the loan for equitable reasons.  Finally, debtor's speculation that U.S. Bank will be paid in full (except default interest) from cash flow in the future does not suggest default interest is inequitable.  The loan matured two-and-one-half years ago.  The testimony offered by U.S. Bank bears out the harm that is actually occurring to the value of the loan.

3MB contends Foss v. Boardwalk Partners (In re Boardwalk Partners), 171 B.R. 87 (Bankr. D. Ariz. 1994) supports a finding that default interest is inequitable.  A close reading shows otherwise.  There, the court examined secured creditor claims to property sale proceeds.  After authorizing disbursement of the principal owed the lienholders, the court reviewed the default interest claims.  But in Boardwalk Partners, the court noted no effort by the lienholders to justify the default interest rate and the contract rate was above market when the loan was made.  Id. at 92-93.  The Boardwalk Partners court considered earlier cases noting the courts "implicitly examined" the reasonableness of the interest rate.  Id. at 92.  Holding the default rate (14.5%) was unreasonable, the Boardwalk Partners court did not hold the equities would always support disallowing default interest.  3MB here provided no evidence the interest rate was unreasonable or unconscionable, but U.S. Bank presented evidence the default interest rate was neither.

The court concludes, then, that based on the evidence presented and the terms of the Note, the default interest provision is enforceable and need not be examined under the liquidated damages rubric.  The clause involved here is a valid "alternative performance" and is not a penalty under California

law.  Since the issue is close, the court will now examine the default interest provision as liquidated damages.  As will be seen, this leads to the same conclusion.

3.  Alternatively, the default interest provision is a valid liquidated damages clause.

The validity of a liquidated damages clause in a commercial contract is governed by Cal. Civ. Code § 1671(b), which provides:

> Except as provided in subdivision (c), a provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made.

The adverse party, here 3MB, has the burden of proving that the clause was unreasonable.  The current section "liberalizes" the availability of liquidated damages in non-consumer contract cases.  Ridgley v. Topa Thrift & Loan Ass'n, 17 Cal. 4th 970, 977 (1998).  This, in part, is how liquidated damages clauses are more available in commercial contracts.  Id.

The amount of damages U.S. Bank or its predecessors actually incurred is irrelevant to the reasonableness of the liquidated damages clause.  Instead, the validity of the clause depends on "its reasonableness at the time the contract was made and not as it appears in retrospect."  Law Revision Commission Comments to Cal. Civ. Code § 1671 (Deerings).  The Commission also lists typically relevant circumstances in the reasonableness inquiry:

- Relationship that the damages provided in the contract bear to the range of harm that reasonably could be anticipated at the time of making the contract.
- Relative equality of the bargaining power of the parties.
- Whether the parties were represented by lawyers when the contract was made.
- Anticipation of the parties that proof of actual damages would be costly and inconvenient.
- The difficulty of proving causation and foreseeability.
- Whether the liquidated damages provision is included in a form contract.

Id.

Ridgley focuses these factors into a two-pronged inquiry. 3MB must establish that the default interest provision "bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach." Ridgley, 17 Cal. 4th at 977. Also, the parties must also have failed to make a "reasonable endeavor" to estimate the fair average compensation for any loss that may be sustained. Id. The court now examines these two issues in order.

A.  The evidence establishes the reasonable relationship to anticipated actual damages.

3MB claims the value of the shopping center when the loan was made was enough to cover any loss experienced by the lender upon default or foreclosure.  The second "earnout" loan is, according to 3MB, evidence of U.S. Bank's predecessor's comfort

with their collateral position.  So, 3MB contends, the default interest is not reasonably related to actual loss when the contract was made.  To be sure, there may have been equity protecting Prudential's position then but alternative "protections" available to a party upon inception of the contract is not the relevant test.  The issue is whether there is a reasonable relationship between the default interest and actual damages.  The evidence here supports U.S. Bank.

First, both Nikula and Nelson testified that the four percent increase over the "Note Rate" is consistent with similar commercial loans.  Nelson testified that four percent is a reasonable damage estimate at the loan's inception based on the harm anticipated upon default. This is bolstered by the fact default interest is standard in commercial mortgage backed security transactions.  Nelson explained the initial pricing of the loan reflected full payment at maturity and the increased risk to full recovery when the loan was not paid support the reasonableness of default interest provision. This testimony is uncontradicted.

Second, the language of the Note itself cannot be ignored. The Note in part states:

> Borrower acknowledges that it would be extremely
> difficult or impracticable to determine Lender's
> actual damages resulting from any late payment, Event
> of Default or prepayment, and the late charges,
> default interest and prepayment fees, premiums, fees
> and charges described in this Note are reasonable
> estimates of those damages and do not constitute a
> penalty.

When the Note was signed, 3MB acknowledged (a) the difficulty in determining actual damages and (b) default interest (is) a reasonable estimate of the damages. These are facts conclusively presumed as between 3MB and Prudential (now U.S. Bank) when the Note was made and not recitals of consideration. Cal. Evidence Code § 622; Federal Rule of Evidence 302.[13]  So, most of the pre-requisites to a valid liquidated damages clause are conclusively presumed to exist here.

Third, the remaining relevant conditions for a valid liquidated damages clause are present.  Both parties (Prudential and 3MB) had counsel when the Note was signed.  Though Prudential is a sophisticated lender, 3MB's principals were and are sophisticated borrowers.  There is uncontradicted testimony that when the Note was made, the default interest component of the Note was within the range of expected damages the lender would experience in the event of default.  The Note does appear almost identical with the other notes submitted to the court as evidence of the relevant transactions, but the court is not convinced the similar language makes the Note a "form contract." In sum, the "factors" establish that, on balance, the default interest provision involved here is a valid liquidated damages clause.

---

[13] The presumption is inapplicable if: there is a lack of arm's length negotiations; the contract is an adhesion contract; or the contract is invalid.  See City of Santa Cruz v. PG&E, 82 Cal. App 4th 1167, 1176-77 (2000) and Bruni v. Didion, 160 Cal. App. 4th 1272, 1291 (2008).  None of those conditions exist here. But cf. Stoneridge Parkway Partners, LLC v. MW Housing Partners III, L.P., 153 Cal. App. 4th 1373, 1382-83 (2007) [holding the presumption was inapplicable to a recital related to an interest provision since it was a recital of consideration and the statements in the agreement indisputably "did not comport with either party's intention or understanding of the transaction."]

Fourth, the cases holding otherwise relied upon by 3MB are distinguishable.  An invalid liquidated damage clause was found when the proponent of the clause provided no evidence that the default rate was reasonably related to increased risk.  Cal. Bank & Tr. v. Shilo Inn, Seaside E., LLC, No. 3:12-CV-00506-HZ, 508, 509, 2012 U.S. Dist. LEXIS 163134 (D. Or. Nov. 15, 2012). Here, there is evidence about the risk and the court in Shilo Inn did not hold default interest could not be considered compensation for increased risk.  In re 8110 Aero Drive Holdings, LLC, No. BR 16-03135-MM11, 2017 WL 2712961 (Bankr. S.D. Cal. May 8, 2017) is also distinguishable.  There the court noted the risk of the loan itself was the primary factor in the unknown costs alleged by the lender to support default interest. Id. at *10.  Here, the value of the loan was anticipated to be compromised if unpaid at maturity.  In 8110 Aero Drive, the loan had not matured, and the court found that 151% of the value of the missed payments was a disproportionate charge compared to the lender's loss and thus a penalty.  Id. at *12-*13.  Those facts are not present here.  The uncontradicted testimony is the default interest accrued is a small percentage of the loan balance.

Other cases 3MB relies upon, on close reading, do not help its' position.  Morris v. Redwood Empire Bancorp, 128 Cal. App. 4th 1305, 1314-15 (2005) held a "termination fee" charged a merchant under a credit card agreement was not a liquidated damage clause but a form of alternative performance since the fee was not triggered by a breach of contract.  In El Centro Mall, LLC v. Payless ShoeSource, Inc., 174 Cal. App. 4th 58

(2009), the court of appeal affirmed a trial court ruling finding a liquidated damage provision in a lease was not a penalty.  In El Centro Mall there was evidence suggesting the amount charged was arbitrary but there was contrary evidence which the trial court found persuasive. There is evidence supporting the reasonableness of the clause in this case which this court has already found persuasive.[14]

B.  The "reasonable endeavor" prong has been met here.

3MB argues that when the Note was negotiated there were no discussions about why default interest provisions were contained in the Note or any estimation of damages if there was a default. First, the conclusive presumption discussed above means the discussions, if any, are irrelevant.

Second, even if the presumption was inapplicable, the validity of a liquidated damages clause does not depend on actual negotiation over its provisions. "[T]he reasonable endeavor test does not require both parties to a form contract to expressly negotiate the amount of liquidated damages." Util. Consumers' Action Network v. AT&T Broadband of S. Cal., Inc., 135 Cal. App. 4th 1023, 1035 (2006).  See also Lowe v. Mass. Mut. Life Ins. Co., 54 Cal. App. 3d 718, 735-38 (1976) ["not necessary for the prospective lender to review all of its possible damages with the assignor" — standby deposit retained by lender under lender's funding commitment].  Rather, the focus is on the motivation and purpose in imposing the charges and

---

[14] That said, the El Centro Mall court did hold that one component of the liquidated damages was a penalty because of other lease provisions applicable upon the tenant's default. Id. at 64.

their effect.  <u>Utility Consumers' Action Network</u>, 135 Cal.
App.4th at 1029.

The evidence here is the extent of losses the lender would suffer upon default were unknown or at least not quantifiable when the Note was signed.  The diminished loan value and the increased costs were anticipated but the extent of loss was not.  Instead, the Note provided for default interest well within market standards for commercial contracts.  There is no evidence 3MB was unaware that the lender would incur losses if the Note was not retired when due or otherwise was in default.  There is no evidence the default interest rate had no relationship to the anticipated loss; in fact, it is to the contrary.  Since the default interest charge appears reasonable and does not have as its primary purpose to serve as a threat to compel compliance, the clause at issue is a reasonable endeavor to estimate the lender's losses in event of default.  Consequently, the default interest provision here is an enforceable liquidated damages clause.


CONCLUSION

For the foregoing reasons, the objection to allowance of U.S. Bank's claim is OVERRULED.  A separate order shall issue.


**Dated:** Dec 05, 2019                    **By the Court**

*René Lastreto II*

**René Lastreto II, Judge**
**United States Bankruptcy Court**

**Instructions to Clerk of Court**
**Service List - Not Part of Order/Judgment**

        The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below.  The Clerk of Court will send the Order via the BNC or, if checked   X   , via the U.S. mail.

3MB, LLC
1201 24th Street, Suite B-210
Bakersfield CA 93301

Office of the U.S. Trustee
United States Courthouse
2500 Tulare Street, Room 1401
Fresno CA 93721

Amir Gamliel
1888 Century Park E #1700
Los Angeles CA 90067

David M. Neff
1 IBM Plaza
Chicago IL 60611

Leonard K. Welsh
4550 California Ave 2nd Fl
Bakersfield CA 93309